| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **CNA EQUITY GROUP, INC.** |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA |
| Case number (if known) | 23-41294 WJL |

☐ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Business Under Sub Chapter 5 of Chapter 11

**Plan of Reorganization, dated January 4, 2024, filed by CNA Equity Group, Inc.**

### Background

**A. Brief History of the Debtor and this Filing**

1. Since 2008, the Debtor has operated as a privately held California corporation which acts as a licensed mortgage broker for individuals and entities in obtaining real estate financing. The Debtor operates strictly as a third party mortgage broker and has no involvement with any potential lenders' independent underwriting analysis and due diligence to approve or disapprove any individual loan. The mortgage application process begins with an initial consultation with the borrower via the application process and the issuance of a credit check. The next step in the process the application to prequalify the borrower based on the information provided and identify the loan product(s), program(s) and rate(s) available based on the needs of the borrower. Once the borrower selects one of the programs presented, the loan request is submitted to the selected lender in which the chosen lender will request the specific documentation required for final approval.

2. Since its inception, the Debtor has been one of the most successful mortgage brokers in the state of California brokering loans with both institutional banks as well as private lenders. The Debtor has operated through both strong and chaotic markets in this industry and has always been able to generate sufficient revenue to survive and weather the ups and downs of the unpredictable real estate financing markets. Prior to the lawsuits described below, the Debtor had not been sued for any alleged malfeasance and has consistently serviced its clients with the utmost professionalism and competence.

3. Even with the Debtor's track record of success and integrity, in the past few years, two (2) borrowers alleged to be the victims of a fraud scheme perpetrated by a now deceased individual named Derek Wheat ('Wheat") and/or his associates have sued the Debtor. From the Debtor's understanding, Wheat would convince the borrowers to apply for loans through private lenders as if their personal residence was a rental unit. When the loans were obtained, Wheat would then illegally direct the loan proceeds to himself or entities other than the borrowers. Although powers of attorney and loan documents were signed and notarized, some borrowers alleged that they did not become aware of the loans or the amounts of the loans until the loans went into default. The victimized borrowers then filed lawsuits naming any party involved in the loan process, the lenders and the brokers associated with the loan, seeking to invalidate the loan security and/or obtain money damages. None of the plaintiffs have sought to pursue recovery for their losses from Wheat, his surviving heirs, or his estate directly. In one (1) of the cases, the Debtor is the sole remaining defendant after the lender defendant foreclosed on the plaintiff's property and was dismissed from the action. In these two (2) lawsuits filed, the plaintiffs have alleged, among other things, that the Debtor breached its fiduciary duty owed to the borrowers, that the Debtor or its employees failed to conduct due diligence to discover that Wheat and his co-conspirators were committing a fraud, or that the Debtor is somehow directly liable for the acts of Wheat and his co-conspirators. The Debtor nor any of its employees or agents had any knowledge that Wheat was perpetrating this scheme and would never have knowingly allowed any loan application influenced by Wheat to submitted to any lender.

4. There is one (1) other case in which Wheat purportedly obtained an unsecured loan and failed to repay the lender, and the lender claims that the Debtor was the broker and/or stood to benefit from the loan. The Debtor never heard about this purported unsecured loan before being named in the case, was not the broker for the loan, and would not have been a broker because the Debtor is a mortgage broker for loans secured by real property as opposed to unsecured loans. All of the other defendants in the case are now deceased, have filed for bankruptcy, or are unable to be located, and therefore the Debtor is the sole remaining defendant.

5. Finally, there is one (1) case where a borrower claims that the Debtor and I failed to supervise a loan transaction coordinator who was an independent contractor, and failed to obtain the lender's promise to provide additional funds as sought by the borrower. Although the borrower also sued the construction contractor who failed to complete the project, the borrower claims

that the Debtor is responsible for the financial loss due to her property development and sale being delayed, and that she had to pay fees to procure another loan elsewhere as well as having to sell for a lower price to avoid foreclosure by the lender. The transaction coordinator is now deceased and the construction contractor filed for bankruptcy, and therefore the Debtor and its principal Michael Mulry are the only remaining defendants in that case.

6. A trial date was set in one (1) of these cases with the three (3) others soon to be set for trial which requires the Debtor to expend significant resources in trial preparation. The Debtor is a party to an indemnity agreement pursuant to the Debtor's bylaws with the Debtor to defend and hold Mr. Mulry harmless in the action he is named as a defendant. It is possible that other plaintiffs may move to amend their complaints to add Mr. Mulry individually as a defendant, and likewise the Debtor's Bylaws provide that it can defend me against expenses, judgments, fines, settlements, and other amounts actually and reasonably incurred in connection with any proceeding arising by reason of the fact that I am an officer, director, employee, and agent of the Debtor.

7. Prior to this case filing, the Debtor's sole shareholder was paid a yearly W-2 salary of $20,000 and additional distributions in the form of a shareholder loan. The balance of the shareholder loan is $1,356,544 and is evidenced by a written promissory note which provides monthly payment within a five (5) year balloon date in 2028.

8. In addition to the cost of litigation and the possibility of a judge or jury finding the Debtor liable not based on the Debtor's act but in order to redress the bad acts of Wheat and his cohorts, the real estate financing market is currently facing obstacles due to the slow down in the economy and, more importantly, the increase in interest rates. Although the Debtor believes it could have weathered either one of these obstacles alone, both occurring at the same time is the perfect storm forcing the Debtor to file this chapter 11 to address these claims in a fair and equitable fashion.

9. The Debtor has listed all known private lender borrowers and private lenders to provide as much notice to potential claimants as possible. This is not an acknowledgment that these individuals and entities have claims against the Debtor, but to ensure due process to all potential creditors. As for any claims arising from conforming institutional loans that comprise the vast majority of transactions brokered by the Debtor, the Debtor's errors and omissions insurance may provide coverage for such claims.

10. The Debtor has two secured creditors: (1) $1,999,900 to the Small Business Administration for an EIDL loan dated May 8, 2021 secured by all the Debtor's asset with a UCC-1 Financing Statement recorded with the California Secretary of State on May 22, 2021; and (2) $50,792 to Land Rover Financial Group c/o JP Morgan Chase secured by a 2021 Range Rover co-owned by the Debtor and myself. The vehicle is used by me as an employee of the Debtor.

11. The Debtor leases its office in San Ramon under a commercial lease with Clancy Investment Company. The lease is current and expires in September 2024.

12. The total filed non indemnity/litigation, non disputed unsecured creditors in this case total $34,409. The total indemnity/litigation, disputed unsecured creditors in this case total $9,289,000. The Debtor believes these claims are highly inflated and subject to objection.

13. The Debtor has remained debtor in possession in this bankruptcy case and has been operating under orders for authorization for use of the secured creditors' cash collateral.

**B. Liquidation Analysis**

To confirm the Plan, the Court must find all creditors and equity interests holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**.

**C. Projections Regarding Performance Under the Plan**

Presently, the Debtor's sole income comes from business operation. Based on the projected income and expenses, the Debtor will generate total net monthly disposable income over three (3) years pursuant to §1191(c)(2) of $40,036 . Attached as **Exhibit B** to this Plan is the calculation of the Debtor's net income and Effective Date Feasibility.

### Article 1: Summary

This Plan of Reorganization (the *Plan*) under subchapter 5 of chapter 11 of the Bankruptcy Code (the *Code*) proposes to pay creditors of the Debtor from (a) funds that are currently on hand and from Debtors' future net disposable income.

This Plan provides for:
- __1__ class of priority claims;
- __2__ classes of secured claims; and
- __1__ class of non-priority unsecured claims.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1 Priority** | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), ["gap" period claims in an involuntary case under § 507(a)(3),] and priority tax claims under § 507(a)(8)). There are three (2) priority tax claims: Franchise Tax Board ($1,643.50); and Internal Revenue Service ($27.11) |
| | **Class 2.1 Secured** | The claim of Small Business Administration |
| | **Class 2.2 Secured** | The claim of Land Rover Financial Group c/o JP Morgan Chase |
| | **Class 3.1** | All non-priority unsecured claims allowed under § 502 of the Bankruptcy Code |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.02 | **Administrative expense claims** | Each holder of an administrative expense claim arising before the Confirmation Hearing and allowed under § 503 of the Code, will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. |
| 3.03 | **Priority tax claims** | There are two (2) priority tax claims: Franchise Tax Board ($1,643.50); and Internal Revenue Service ($27.11) |
| 3.04 | **Statutory fees** | No fees are required to be paid under 28 U.S.C. § 1930. |
| 3.05 | **Prospective quarterly fees** | No fees are required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7). |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01  **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1 - Priority Claims** | ☐ Impaired<br>☒ Unimpaired | To be paid in full within five (5) years from the petition date at the statutory interest.<br><br>**Franchise Tax Board-** the priority tax claim in the amount of $1,643.50 shall be paid in full six (6) months from the Effective Date of the Plan<br><br>**Internal Revenue Service-Dept. of Treasury-** the priority tax claim in the amount of $27.11 shall be paid in full within (6) months from the Effective Date. |

| | | | |
|---|---|---|---|
| **Class 2.1 The Secured Claim of the Small Business Administration** | ☐ Impaired<br>☒ Unimpaired | | Class 2.1 is unimpaired. The claim the claimant will retain all pre petition lien rights in its pre petition collateral and will be paid pursuant to the loan agreement. |
| **Class 2.2 The Secured Claim of Land Rover Financial Group c/o JP Morgan Chase** | ☐ Impaired<br>☒ Unimpaired | | Class 2.2 is unimpaired. The claim the claimant will retain all pre petition lien rights in its pre petition collateral and will be paid pursuant to the loan agreement. |
| **Class 3.1 Non-Priority Unsecured Creditors** | ☒ Impaired<br>☐ Unimpaired | | Class 3.1 will receive a payment of $40,036 within three years from the Effective Date.  The payment will be paid pro rata to the class claimants. |

### Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed Claim:** | A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br><br>(i) a proof of claim has been filed or deemed filed, and the Debtor, the Trustee or another party in interest has filed an objection; or<br><br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Delay of distribution on a disputed claim:** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.03 | **Settlement of disputed claims:** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

### Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | (a)  The Debtor assumes all executory contracts and unexpired leases as of the effective date other than those that have been previously terminated by order or agreement. |

### Article 7: Means for Implementation of the Plan

Debtor will implement the plan through the Debtor's future revenues and/or refinancing post confirmation.

Arti

| | | |
|---|---|---|
| 8.01 | **Definitions and rules of construction** | The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions: |

| | | |
|---|---|---|
| 8.02 | **Effective Date** | The Effective Date of this Plan is the first business day following the date that is 15 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| 8.03 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.04 | **Binding Effect:** | The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity. |
| 8.05 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.06 | **Controlling Effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.08 | **Retention of Jurisdiction** | The Bankruptcy Court shall retain and have jurisdiction over the bankruptcy case for all purposes provided by the Code, including, without limitation, for the following purposes: |

> To determine any and all objections to the allowance of Claims, and all counter-claims asserted against any holder of a Claim, and to allow, disallow, estimate, liquidate or determine any Claim;
>
> To grant full and complete relief upon the request of the Reorganized Debtor;
>
> To determine compliance with the provisions of the Debtor's Plan;
>
> To determine any and all motions for compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Code or the Debtors' Plan which accrued on or prior to the Confirmation Date;
>
> To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on the Effective Date, except as provided in the Confirmation Order, or which shall be commenced on or after the Effective Date and be properly before the Bankruptcy Court;
>
> To consider any modifications of the Debtor's Plan, any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Order of Confirmation, to the extent authorized by the Code; and
>
> To implement the provisions of the Debtor's Plan and to issue orders in aid of execution of the Debtors' Plan to the extent authorized by Section 1142 of the Code.

| | | |
|---|---|---|
| 8.09 | **Default** | Failure to pay any amount due under this Plan within 20 days of the due date shall constitute a Default. Upon the occurrence of a Default, any affected creditor may give 15 days' Notice of Default. Absent a cure within that period, the creditor may present a Motion, on not less than 21 days' notice, seeking appropriate relief from the Bankruptcy Court. |

## Article 9: Discharge

9.01    If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

> (i) imposed by this Plan; or
> (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure

### Article 10: Other Provisions

Professionals employed by the Reorganized Debtors shall be paid in the ordinary course by the representative of the estate and need not submit fee applications with respect to services performed after the Confirmation Date. All assets of the estate shall revest in the Debtor upon confirmation of the Plan.

Respectfully submitted,

**X** /s/ Michael Mulry
[Signature of the Plan Proponent]

**CNA Equity Group, Inc.**
[Printed name]

**Michael Mulry, President**
[Printed name]

**X** /s/ Chris D. Kuhne*r*
[Signature of the Attorney for the Plan Proponent]

**Chris D. Kuhner**
[Printed name]

## Exhibit A – Chapter 7 Liquidation Analysis

As of January 1, 2024

|  | Amount | Amount |
|---|---|---|
| Misc. Office Equipment and Furniture |  | $4,700 |
| Shareholder Loan |  | $1,356,544 |
| Cash on Hand |  | $150,000 |
| Retainer paid pursuant to pre petition indemnity agreement |  | $24,500 |
| Website |  | $2,554 |
| Vehicle (Equity) |  | $30,000 |
| **Total Net Proceeds** |  | **$1,568,298** |
| LESS |  |  |
| Secured Debt (SBA and JP Morgan)   [SUBTRACT] | $2,045,992 |  |
| Chapter 11 Administrative Fees   [SUBTRACT] | $10,000 |  |
| Priority Claims   [SUBTRACT] | $1,643.47 |  |
| Chapter 7 Trustee Fees   [SUBTRACT] | $n/a |  |
| Chapter 7 Professional Fees   [SUBTRACT] | $n/a |  |
|  |  |  |

| | |
|---|---|
| Net Funds to Unsecured Creditors in a Chapter 7 Bankruptcy | $0 |
| Estimated Amount of Unsecured Creditors (litigation claims not included, estimated indemnity claims and undisputed unsecured claims included. | $500,000 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | __% |
| Percent Distribution to Unsecured Creditors Under Chapter 7 | 0% |

# EXHIBIT B

| Category | April | May | June | July | August | September | October | November | December | 2024 Total | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan Revenue | $53,000 | $53,000 | $53,000 | $53,000 | $53,000 | $53,000 | $53,000 | $53,000 | $53,000 | $477,000 | |
| Shareholder Loan Repayment | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $9,000 | $81,000 | |
| Other Income | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | |
| **Total Cash Receipts** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$558,000** | |
| | | | | | | | | | | | |
| Appraisal | $6,400 | $6,400 | $6,400 | $6,400 | $6,400 | $6,400 | $6,400 | $6,400 | $6,400 | $57,600 | |
| Closing Costs | $3,100 | $3,100 | $3,100 | $3,100 | $3,100 | $3,100 | $3,100 | $3,100 | $3,100 | $27,900 | |
| Credit Reporting Services | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $500 | $4,500 | |
| **Total Loan Costs** | **$10,000** | **$10,000** | **$10,000** | **$10,000** | **$10,000** | **$10,000** | **$10,000** | **$10,000** | **$10,000** | **$90,000** | |
| | | | | | | | | | | | |
| Accounting | $90 | $90 | $90 | $90 | $90 | $90 | $90 | $90 | $2,160 | $2,880 | Quickbooks, Jason Crawshaw |
| Automobile | $100 | $100 | $1,153 | $126 | $100 | $100 | $100 | $100 | $100 | $1,979 | DMV, Misc Expenses |
| Commissions | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $112,500 | |
| Computer | $198 | $198 | $198 | $198 | $198 | $198 | $198 | $198 | $198 | $1,782 | Calyx |
| Consulting | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $27,000 | Bookkeeping |
| Continuing Education | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $125 | $125 | First Tuesday |
| Dues and Subscriptions | $720 | $620 | $1,467 | $920 | $620 | $620 | $620 | $620 | $620 | $6,827 | Leadpops, Lenderhomepage, bntouch, FocusIT, Godaddy, Contra Costa Association of Realtors, Docusign, Rocket |
| Insurance | $3,921 | $3,921 | $5,919 | $3,921 | $3,921 | $3,921 | $5,657 | $3,921 | $4,221 | $39,323 | Farmers, Cres, Mass Mutual, Anthem |
| Licensing | $400 | $0 | $240 | $0 | $0 | $120 | $0 | $400 | $200 | $1,360 | Integrity, NMLS |
| Office Expenses | $1,296 | $1,296 | $1,296 | $1,296 | $1,296 | $1,296 | $1,296 | $1,296 | $1,296 | $11,668 | Extra Space, Proshred, CIT, Misc Expenses |
| Payroll | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $12,500 | $112,500 | |
| Rent | $1,718 | $1,718 | $1,718 | $1,718 | $1,718 | $1,718 | $1,718 | $1,718 | $1,718 | $15,461 | |
| Repair and Maintenance | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $900 | monthly average |
| Telephone/Internet | $1,585 | $1,585 | $1,585 | $1,585 | $1,585 | $1,585 | $1,585 | $1,585 | $1,585 | $14,267 | Comcast 1 & 2, ATT, Tmobile |
| **Total Expenses** | **$38,129** | **$37,629** | **$41,767** | **$37,955** | **$37,629** | **$37,749** | **$39,365** | **$38,029** | **$40,323** | **$348,571** | |
| | | | | | | | | | | | |
| Land Rover Loan Repayment | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $15,097 | |
| Legal and Professional Fees | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $9,000 | |
| SBA Loan Repayment | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $89,298 | |
| **Total Other Payments** | **$12,599** | **$12,599** | **$12,599** | **$12,599** | **$12,599** | **$12,599** | **$12,599** | **$12,599** | **$12,599** | **$113,395** | |
| | | | | | | | | | | | |
| **Total Outgoing Payments** | **$60,728** | **$60,228** | **$64,366** | **$60,554** | **$60,228** | **$60,348** | **$61,964** | **$60,628** | **$62,922** | **$551,966** | |
| | | | | | | | | | | | |
| **Forecasted Revenue** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$62,000** | **$558,000** | |
| | | | | | | | | | | | |
| **Forecasted Net Disposable Income** | **$1,272** | **$1,772** | **-$2,366** | **$1,446** | **$1,772** | **$1,652** | **$36** | **$1,372** | **-$922** | **$6,034** | |

*best estimate based on current market and projected income

| Category | January | February | March | April | May | June | July | August | September | October | November | December | 2025 Total | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan Revenue | $58,300.00 | $58,300.00 | $58,300.00 | $58,300.00 | $58,300.00 | $58,300.00 | $58,300.00 | $58,300.00 | $58,300.00 | $58,300.00 | $58,300.00 | $58,300.00 | $699,600 | |
| Shareholder Loan Repayment | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $108,000 | |
| Other Income | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | |
| **Total Cash Receipts** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$807,600** | |
| | | | | | | | | | | | | | | |
| Appraisal | $6,800 | $6,800 | $6,800 | $6,800 | $6,800 | $6,800 | $6,800 | $6,800 | $6,800 | $6,800 | $6,800 | $6,800 | $81,600 | |
| Closing Costs | $3,410 | $3,410 | $3,410 | $3,410 | $3,410 | $3,410 | $3,410 | $3,410 | $3,410 | $3,410 | $3,410 | $3,410 | $40,920 | |
| Credit Reporting Services | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $550 | $6,600 | |
| **Total Loan Costs** | **$10,760** | **$10,760** | **$10,760** | **$10,760** | **$10,760** | **$10,760** | **$10,760** | **$10,760** | **$10,760** | **$10,760** | **$10,760** | **$10,760** | **$129,120** | |
| | | | | | | | | | | | | | | |
| Accounting | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $100 | $3,100 | $4,200 | Quickbooks, Jason Crawshaw |
| Automobile | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $1,320 | DMV, Misc Expenses |
| Commissions | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $165,000 | |
| Computer | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $220 | $2,640 | Calyx |
| Consulting | $3,300 | $3,300 | $3,300 | $3,300 | $3,300 | $3,300 | $3,300 | $3,300 | $3,300 | $3,300 | $3,300 | $3,300 | $39,600 | Bookkeeping |
| Continuing Education | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $137 | $137 | First Tuesday |
| Dues and Subscriptions | $1,827 | $682 | $682 | $792 | $682 | $1,614 | $1,012 | $682 | $682 | $682 | $682 | $682 | $10,700 | Leadpops, Lenderhomepage, bntouch, FocusIT, Godaddy, Contra Costa Association of Realtors, Docusign, Rocket |
| Insurance | $6,909 | $4,313 | $4,313 | $4,313 | $4,313 | $6,511 | $4,313 | $4,313 | $4,313 | $6,223 | $4,313 | $4,643 | $58,791 | Farmers, Cres, Mass Mutual, Anthem |
| Licensing | $132 | $0 | $132 | $440 | $0 | $264 | $0 | $0 | $132 | $0 | $440 | $220 | $1,760 | Integrity, NMLS |
| Office Expenses | $1,426 | $1,426 | $1,426 | $1,426 | $1,426 | $1,426 | $1,426 | $1,426 | $1,426 | $1,426 | $1,426 | $1,426 | $17,113 | Extra Space, Proshred, CIT, Misc Expenses |
| Payroll | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $13,750 | $165,000 | |
| Rent | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $1,900 | $22,800 | |
| Repair and Maintenance | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $1,320 | monthly average |
| Telephone/Internet | $1,750 | $1,750 | $1,750 | $1,750 | $1,750 | $1,750 | $1,750 | $1,750 | $1,750 | $1,750 | $1,750 | $1,750 | $21,000 | Comcast 1 & 2, ATT, Tmobile |
| **Total Expenses** | **$45,284** | **$41,411** | **$41,543** | **$41,961** | **$41,411** | **$44,805** | **$41,741** | **$41,411** | **$41,543** | **$43,321** | **$41,851** | **$45,098** | **$511,380** | |
| | | | | | | | | | | | | | | |
| Land Rover Loan Repayment | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $20,129 | |
| Legal and Professional Fees | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $1,100 | $13,200 | |
| SBA Loan Repayment | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $119,064 | |
| **Total Other Payments** | **$12,699** | **$12,699** | **$12,699** | **$12,699** | **$12,699** | **$12,699** | **$12,699** | **$12,699** | **$12,699** | **$12,699** | **$12,699** | **$12,699** | **$152,393** | |
| | | | | | | | | | | | | | | |
| **Total Outgoing Payments** | **$68,743** | **$64,871** | **$65,003** | **$65,421** | **$64,871** | **$68,264** | **$65,201** | **$64,871** | **$65,003** | **$66,780** | **$65,311** | **$68,558** | **$792,894** | |
| | | | | | | | | | | | | | | |
| **Forecasted Revenue** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$67,300** | **$807,600** | |
| | | | | | | | | | | | | | | |
| **Forecasted Net Disposable Income** | **-$1,443** | **$2,429** | **$2,297** | **$1,879** | **$2,429** | **-$964** | **$2,099** | **$2,429** | **$2,297** | **$520** | **$1,989** | **-$1,258** | **$14,706** | |

*best estimate based on current market and projected income

Case: 23-41294    Doc# 42    Filed: 01/04/24    Entered: 01/04/24 14:39:10    Page 9 of 10

| Category | January | February | March | April | May | June | July | August | September | October | November | December | 2026 Total | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Loan Revenue | $64,130.00 | $64,130.00 | $64,130.00 | $64,130.00 | $64,130.00 | $64,130.00 | $64,130.00 | $64,130.00 | $64,130.00 | $64,130.00 | $64,130.00 | $64,130.00 | $769,560 | |
| Shareholder Loan Repayment | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $9,000.00 | $108,000 | |
| Other Income | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | |
| **Total Cash Receipts** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$877,560** | |
| | | | | | | | | | | | | | | |
| Appraisal | $7,480 | $7,480 | $7,480 | $7,480 | $7,480 | $7,480 | $7,480 | $7,480 | $7,480 | $7,480 | $7,480 | $7,480 | $89,760 | |
| Closing Costs | $3,751 | $3,751 | $3,751 | $3,751 | $3,751 | $3,751 | $3,751 | $3,751 | $3,751 | $3,751 | $3,751 | $3,751 | $45,012 | |
| Credit Reporting Services | $605 | $605 | $605 | $605 | $605 | $605 | $605 | $605 | $605 | $605 | $605 | $605 | $7,260 | |
| **Total Loan Costs** | **$11,836** | **$11,836** | **$11,836** | **$11,836** | **$11,836** | **$11,836** | **$11,836** | **$11,836** | **$11,836** | **$11,836** | **$11,836** | **$11,836** | **$142,032** | |
| | | | | | | | | | | | | | | |
| Accounting | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $110 | $3,410 | $4,620 | Quickbooks, Jason Crawshaw |
| Automobile | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $1,452 | DMV, Misc Expenses |
| Commissions | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $181,500 | |
| Computer | $242 | $242 | $242 | $242 | $242 | $242 | $242 | $242 | $242 | $242 | $242 | $242 | $2,904 | Calyx |
| Consulting | $3,630 | $3,630 | $3,630 | $3,630 | $3,630 | $3,630 | $3,630 | $3,630 | $3,630 | $3,630 | $3,630 | $3,630 | $43,560 | Bookkeeping |
| Continuing Education | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $151 | $151 | First Tuesday |
| Dues and Subscriptions | $2,009 | $750 | $750 | $871 | $750 | $1,775 | $1,113 | $750 | $750 | $750 | $750 | $750 | $11,770 | Leadpops, Lenderhomepage, bntouch, FocusIT, Godaddy, Contra Costa Association of Realtors, Docusign, Rocket |
| Insurance | $7,600 | $4,744 | $4,744 | $4,744 | $4,744 | $7,162 | $4,744 | $4,744 | $4,744 | $6,845 | $4,744 | $5,107 | $64,670 | Farmers, Cres, Mass Mutual, Anthem |
| Licensing | $145 | $0 | $0 | $484 | $0 | $290 | $0 | $0 | $145 | $0 | $484 | $242 | $1,936 | Integrity, NMLS |
| Office Expenses | $1,569 | $1,569 | $1,569 | $1,569 | $1,569 | $1,569 | $1,569 | $1,569 | $1,569 | $1,569 | $1,569 | $1,569 | $18,824 | Extra Space, Proshred, CIT, Misc Expenses |
| Payroll | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $15,125 | $181,500 | |
| Rent | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $2,090 | $25,080 | |
| Repair and Maintenance | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $121 | $1,452 | monthly average |
| Telephone/Internet | $1,925 | $1,925 | $1,925 | $1,925 | $1,925 | $1,925 | $1,925 | $1,925 | $1,925 | $1,925 | $1,925 | $1,925 | $23,100 | Comcast 1 & 2, ATT, Tmobile |
| **Total Expenses** | **$49,812** | **$45,552** | **$45,697** | **$46,157** | **$45,552** | **$49,285** | **$45,915** | **$45,552** | **$45,697** | **$47,653** | **$46,036** | **$49,608** | **$562,518** | |
| | | | | | | | | | | | | | | |
| Land Rover Loan Repayment | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $1,677 | $20,129 | |
| Legal and Professional Fees | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $1,210 | $14,520 | |
| SBA Loan Repayment | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $9,922 | $119,064 | |
| **Total Other Payments** | **$12,809** | **$12,809** | **$12,809** | **$12,809** | **$12,809** | **$12,809** | **$12,809** | **$12,809** | **$12,809** | **$12,809** | **$12,809** | **$12,809** | **$153,713** | |
| | | | | | | | | | | | | | | |
| **Total Outgoing Payments** | **$74,458** | **$70,198** | **$70,343** | **$70,803** | **$70,198** | **$73,931** | **$70,561** | **$70,198** | **$70,343** | **$72,298** | **$70,682** | **$74,253** | **$858,264** | |
| | | | | | | | | | | | | | | |
| **Forecasted Revenue** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$73,130** | **$877,560** | |
| | | | | | | | | | | | | | | |
| **Forecasted Net Disposable Income** | **-$1,328** | **$2,932** | **$2,787** | **$2,327** | **$2,932** | **-$801** | **$2,569** | **$2,932** | **$2,787** | **$832** | **$2,448** | **-$1,123** | **$19,296** | |

*best estimate based on current market and projected income