1  MARTHA J. SIMON (CBN 98251)
   LAW OFFICE OF MARTHA J. SIMON
2  100 Pine Street - Suite 1250
   San Francisco, California 94111
3  (415) 434.1888 Telephone
   (415) 434.1880 Facsimile
4  mjs@mjsimonlaw.com

5  Attorney for Creditor
   Yeva, Inc. dba
   Saxe Mortgage Company
6

7                    UNITED STATES BANKRUPTCY COURT
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
8                          OAKLAND DIVISION

9

10 _____

11 JOSE RENE BARBOZA AND DAYSI O ROMERO

                      Plaintiffs
12
   v.
13                                          Superior Court Case No. 23-610638
   YEVA, INC. DBA SAXE MORTGAGE COMPANY,
14 CNA EQUITY GROUP, INC.,
   HOME SWEET HOME REALTY AND FUNDING;
15 DOES I through X, inclusive,
   and ROE Business Entities I through X,
16 inclusive

17                    Defendants
   _____
18 **In re**                                **Case No.  23-41294 WJL**

19 **CNA EQUITY GROUP, INC.**                **Chapter 11**
                      **Debtor**
20                                          **NOTICE OF REMOVAL OF**
                                            **PENDING STATE COURT CASE**
21

22

23        TO ALL PARTIES IN THE ABOVE-REFERENCED STATE COURT CIVIL ACTION, THE CLERK OF THE

24 STATE COURT, THE CLERK OF THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT

25                                                                              1

OF CALIFORNIA, OAKLAND DIVISION, THE DEBTOR CNA EQUITY GROUP, INC., AND THE CHAPTER V TRUSTEE:

PLEASE TAKE NOTICE THAT Yeva, Inc. dba Saxe Mortgage Company ("Saxe") hereby submits this Notice of Removal of the case of *Jose Rene Barbosa and Daysi O. Romero v. Yeva, Inc. dba Saxe Mortgage Company, CNA Equity Group, Inc., et al.*, Case No. 23-610638 ("Romero Case"), currently pending in the Superior Court of the State of California, County of San Francisco, to the United States Bankruptcy Court for the Northern District of California, Oakland Division, to the within Chapter 11 case.

This Notice of Removal is submitted in accordance with Rule 9027 of the Federal Rules of Bankruptcy Procedure, 28 U.S.C. §1452(a), and 28 U.S.C. §157(a). The Bankruptcy Court has jurisdiction over the State Court case filed by Jose Rene Barboza and Daysi O Romero, as it is related to the pending bankruptcy.

PROCEDURAL BACKGROUND

Both Saxe and CNA Equity Group, Inc. ("CNA" or "Debtor") are named defendants in the Romero Case Complaint "For Conspiracy, and Mail Fraud in Financing Real Estate Transaction" (*See* Exhibit 1). The Complaint was filed on November 28, 2023. Saxe was served with the Complaint on or about January 23, 2024.

On October 6, 2023 CNA had filed a voluntary bankruptcy petition under Subchapter V of Chapter 11 of the Bankruptcy Code. To the best of Saxe's knowledge, CNA has not been served with the Romero Complaint.

In view of CNA's pending Chapter 11 case, Saxe filed a Notice of Stay with the State Court on February 13, 2024 (*See* Exhibit 2). On February 13, 2024, Plaintiff Romero filed an Ex-Parte Application to enjoin Saxe's scheduled trustee's sale of her real property at 77 Benton Ave. San Francisco CA 94112,

set for February 22, 2024. Saxe offered to continue the trustee's sale, pending resolution of the Complaint, and the sale has been continued.

As there was no affirmative confirmation of a stay from the State Court with respect to the entire Romero Case, out of an abundance of caution, Saxe filed an Answer to the Complaint on February 22, 2024 (*See* Exhibit 3). `

## FACTUAL BACKGORUND

Saxe Mortgage Company is a private money lender which funds mortgage loans. On occasion, Debtor CNA has originated loans for funding by Saxe. As the broker, CNA provided necessary documentation, facts, information, and other assistance as required relating to the loan origination. Pursuant to the Broker Agreement entered into between Saxe and CNA:

"i. The Broker [CNA] shall indemnify and hold harmless Saxe from any and all loss, injury, damage, and/or liability resulting or claimed to have resulted by any person, from

      (i)     any breach of the Broker covenants, representation or warranties under this Agreement, or
      (ii)    otherwise arising from or relating to any acts or omissions, whether willful negligent or otherwise of Broker, its employees or agents, or
      (iii)   the borrower for whom the Broker is acting as agent in connection with any loan to be originated by Broker hereunder….

(*See* Exhibit 4).

On or about October 17, 2017, Saxe made a loan to Daysi O. Romero, based upon the loan application and documentation that CNA, as broker, had provided to Saxe. Plaintiff alleges that she "agreed to the terms placed before her under the belief that, as indicated by the CNA Equity Group, Inc. loan officer, there was no other choice" (*See* Complaint, Exhibit 1, page 3, lines 7-8). Plaintiff defaulted under the terms of the loan and Saxe agreed to a refinance, again with CNA as broker.

In re CNA Equity Group, Inc.
Saxe Mortgage Company's Notice of Removal of State Court Case
Chapter 11 Case No. 23-41294 WJL

Case: 23-41294   Doc# 59   Filed: 03/19/24   Entered: 03/19/24 13:22:46   Page 3 of 43

According to the allegations in the Complaint, Plaintiff sought yet another refinance through another broker, defendant Home Sweet Home Realty and Funding.

<u>Removal of the Pending State Court Case is Appropriate and Necessary</u>

1. <u>The Broker Agreement</u> between Saxe and CNA requires that CNA indemnify Saxe. Thus, in the event that Saxe is found liable to Plaintiff in any way, it is incumbent upon CNA to indemnity Saxe. As Saxe is currently stayed from filing a cross-claim against the Debtor in the State Court, and as the Debtor is required to indemnify Saxe regarding all matters alleged by Plaintiff, the Romero Case *must* be removed to the Bankruptcy Court. Once the matter is brought into the Chapter 11 case, then Saxe may proceed to file a cross-claim against the Debtor. The Broker Agreement alone is a compelling basis for removal.

2. <u>Claims</u>: In its Bankruptcy Schedules, the Debtor listed both Saxe and Romero for "Notice Purposes, Possible Claims." The Debtor was obviously aware of the possible claims. Saxe filed a Proof of Claim #1 and amended that Proof of Claim on March 11, 2024, identifying the Romero litigation as well as a potential claim from another borrower. It is appropriate to remove the State Court litigation with respect to the Romero claim, to address that claim and Saxe's indemnity claim in the Chapter 11 case.

3. <u>The Debtor's Plan of Reorganization</u> (DOC #42) is currently set for a hearing on confirmation on May 15, 2024. The Plan represents that "in the past few years two (2) borrowers alleged to be victims of a fraud scheme perpetrated by a now deceased individual...have sued the Debtor". (Plan, para. 3).

One such borrower was the Chapter 13 Debtor Patricia Boring, who sued Saxe and CNA, with some of the same issues brought in the State Court Complaint by Romero. On March 20, 2023, this Court granted Saxe's Motion for Summary Judgment as to all of Boring's claims for relief. Among other issues,

In re CNA Equity Group, Inc.
Saxe Mortgage Company's Notice of Removal of State Court Case

Chapter 11 Case No. 23-41294 WJL

the Court found that a mortgage broker, not a lender, has a fiduciary duty to the borrower. (*See* AP #22-04029 DOC#83).

In the instant case, the fact that the Debtor must indemnify Saxe as a result of the pending State Court action directly impacts the performance of any Plan proposed by the Debtor.

Debtor's Plan refers to other potential claimants, however the State Court Plaintiff Romero does not appear to be one of them. A Plan cannot be confirmed without bringing the Romero Case before the Bankruptcy Court.

<u>This Court Has Jurisdiction over the Pending Causes of Action</u>

Pursuant to 28 U.S.C. §1478(a) "any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce [a] . . . regulatory or police power" may be removed "if the bankruptcy courts have jurisdiction over such claim or cause of action.

"A bankruptcy court's 'related to' jurisdiction is very broad, 'including nearly every matter directly or indirectly related to the bankruptcy.'" *Sasson v. Sokoloff* (*In re Sasson*), 424 F.3d 864, 868 (9th Cir. 2005).

Clearly, the Romano Case and the Broker Agreement for indemnity directly relate to the Debtor's Chapter 11. Removal of the Romero Case from State Court is appropriate and proper.

Upon removal of the case, Saxe consents to entry of final orders or judgment by the bankruptcy court. Bankr. R. Civ. Proc. 9027.

LAW OFFICE OF MARTHA J. SIMON

Dated: March 18, 2024

/s/Martha J. Simon
Martha J. Simon
Attorney for Creditor Saxe Mortgage Company

Jose Rene Barboza and Daysi O Romero

3829 Mission St

San Francisco, CA 94110

(415) 424-3033

In Pro Per

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

NOV 2 8 2023

CLERK OF THE COURT
BY: LAURA SIMMONS
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JOSE RENE BARBOZA  AND | CASE NO.: CGC-23-610638 |
| DAYSI O ROMERO, | DEPT NO.: _____ |
|     Plaintiffs, | |
|         v | PLAINTIFFS' COMPLAINT |
| YEVA, INC. DBA SAXE | FOR CONSPIRACY, |
| MORTGAGE COMPANY, CNA | AND MAIL FRAUD |
| EQUITY GROUP, INC.,  HOME | IN FINANCING REAL ESTATE |
| SWEET HOME REALTY AND | TRANSACTIONS |
| FUNDING; | |
| DOES I through X, inclusive, and ROE | |
| Business Entities I through X, inclusive, | |
|     Defendants | |

------------------------------------

### JURISDICTION AND VENUE

This court has jurisdiction this case pursuant to Cal. Code Civ. Proc. § 392 . Property 1 is located within the boundaries of the City of San Francisco. Plaintiff 1 and Plaintiff 2 both live in San Francisco and all matters pertaining to the events giving rise to this complaint happened in San Francisco. For these aforementioned reasons Plaintiff are requesting relief in this court.

### COMPLAINT

COMES NOW the Plaintiffs, Jose Rene Barboza and Daysi O Romero, and files this their Complaint against Yeva, Inc DBA SAXE Mortgage Company , CNA Equity Group, Inc., and Home Sweet Home Realty and Funding, and in support thereof would show the following, to-wit:

## BACKGROUND

Daysi Orbelina Romero (Plaintiff 1), DOB 08/19/1963, a single woman, a self employed restaurant owner and cook, is a self made entrepreneur owner of a restaurant in the San Francisco Mission District by the name of Rinconcito Salvadoreño, since 1999. For the last 5 years she has made an average of $156,000 net income. She has had very little formal education in her lifetime. She did not complete elementary school in her native El Salvador and does not speak English. Starting in 2017 Plaintiff 1 and over the period of next 4 years she acquired 4 separate consecutive real estate loans. Upon review of the terms of each loan the evidence indicates that each was designed to lock her into another loan in the near future provided by Defendant 2 causing Plaintiff 1 the loss of hundreds of thousands of dollars and much suffering.

FIRST LOAN: On or around the first of October 2017, Plaintiff 1 was approached by a representative of CNA Equity Group, Inc (Defendant 1) with an offer to refinance her real property located at 77 Benton Ave San Francisco CA 94112 (Property 1). She lives in this property, She has always lived in this property. At that time she was in Chapter 13 bankruptcy with Mr. David Burchard as Trustee with outstanding debt including:

JP Morgan Chase $4,943.05

IRS $91,385.64

Unsecured claims $54,320.40

Trustee fees $12,805.18

In addition she had outstanding San Francisco Property taxes in the amount of $33,230.84, and 3 mortgages with Deed of Trusts totaling $507,197.03.

On 10/17/2017, Plaintiff 1, signed a Deed of Trust for the refinancing of Property 1 for the lender put forward by CNA Equity Group Inc. (Defendant 1), namely Yeva, Inc, DBA Saxe Mortgage Company (Defendant 2) . The terms of the loan were as follows:

Note for $1,032,000.00 interest only at a rate of 10.25% with a balloon payment on 11/01/2020 and prepayment penalty for the first 90 days. Monthly payment of $8,815.00 starting on 12/01/2017. The first 12 months of payments were charged in advance as reserve in the amount of $105,780.00. CNA Equity Group Inc charged 2% fee or $20,640.00 among other fees. Saxe Mortgage Company charged 4% origination or $41,250.00 among other fees. At close of escrow Borrower received $149,665.52. She used this money to make necessary repairs on her home such as fixing the stucco that in parts was covered by plastic and the roof that was already leaking. Due her dire financial situation she agreed to the terms placed before her under the belief that, as indicated by the CNA Equity Group Inc loan officer, there was no other choice.

Deed of Trust for Property 1.

SECOND LOAN: On or around the first of January 2020, Plaintiff 1, faced with the overdue balloon payment owed to Defendant 2, approached Defendant 2 requesting to modify the loan terms to give her more time to pay. Defendant 2 proceeded to originate a loan, without intermediaries, to refinance the existing loan under the following terms:

Note for $1,697,500.00 interest only at a rate of 10.25% with a balloon payment on 02/15/2023 and prepayment penalty for the first 90 days. Monthly payment of $14,499.48 starting on 03/15/2020. The first 10 months of payments were charged in advance as reserve in the amount of $144,994.79. Defendant 2 charged 3.5% origination or $59,412.50 among other fees.

In addition of the overdue loan to Defendant 2, Plaintiff 1 was facing an IRS lien in the amount of $40,794.32, and two liens from the State of California Dept of Industrial Relations in the total amount of $60,000.00. To close of escrow Borrower had to bring forth $2,733.33. Upon closing escrow Plaintiff received $1,826.55. Deed of Trust for Property 1.

THIRD LOAN: On or around the middle of December 2020, faced with the upcoming due date of the balloon payment owed to Defendant 2 for the Deed of Trust signed the beginning of the same year, and in the knowledge that her financial condition was in no way permissive of making the monthly payments, Plaintiff 1, approached Defendant 2 requesting yet again to modify the loan terms in an effort to enter into loan terms that her financial situation could afford. Defendant 2 proceeded to originate a loan, this time with Home Sweet Home Realty and Funding (Defendant 3), as intermediary, to refinance the existing loan under the following terms:

Note for $1,962,000.00 interest only at a rate of 10.25% with a balloon payment on 02/01/2024 and prepayment penalty for the first 90 days. Monthly payment of $16,758.75 starting on 03/01/2021. The first 9 months of payments were charged in advance as reserve in the amount of $154,518.27. Defendant 2 charged 3.0% origination or $58,860.00 among other fees. Defendant 3 charged 1% broker fee or $19,620.00 among other fees.

Upon closing escrow Plaintiff 1 received $2,383.45. Deed of Trust for Property 1.

FOURTH LOAN: As Plaintiff 1's self employment income could not ever sustain the mortgage payments and had upon inception relied on the interest payments held in reserve by Defendant 2, Plaintiff 1 was now faced with imminent foreclosure on the THIRD LOAN. Then again she endeavor to contact DEFENDANT 2 to modify loan. Only choice provided by DEFENDANT 2 was again to finance not Property 1 but the second property in ownership of PLAINTIFF 1, namely 3825-3829 Mission St San Francisco CA 94110 (Property 2). A mixed property where the restaurant business belonging to PLAINTIFF 1 is located.

Due to PLAINTIFF 1 inability to qualify for financing by herself to purchase Property 2 on July, 2022, then it was then required that a second person come in as a co-borrower in the purchase. Mr. Jose Rene Barboza, DOB 07/11/1994, a single man, employed as a Contrast Specialist for NBC Universal, and friend of Plaintiff 1, then in good faith entered into the agreement of coownership of Property 2. Due to her decades as a tenant in the property Plaintiff 1 was given first option to buy it which she did together with Plaintiff 2.

On or around the middle of January 2023, Defendant 2 proceeded to originate a loan, to finance a subordinate loan against Property 2 to extract enough funds to pay past due interest payments and withdraw Property 1 from foreclosure.

Note against Property 2 is for $315,000.00 interest only at a rate of 11.25% with a balloon payment on 03/01/2026 in the amount of $317,953.13 and prepayment penalty for the first 90 days. Monthly payment of $2,953.13 starting on 04/01/2023. The first 10 months of payments were charged in advance as reserve in the amount of $29,277.00. Defendant 2 charged 4.0% origination or $12,600.00 among other fees..

Upon closing escrow Plaintiff 1 received $37.42, after all reinstatement charges to Defendant 2 were paid through escrow in the amount of $199,429.17 plus another 3 months prepaid interest for Property 1 in the amount of $50,277. Deed of Trust for Property 2.

## FIRST CAUSE OF ACTION

(For Conspiracy to commit Fraud )

I.

Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES I through X, inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

To support a finding of a civil conspiracy Plaintiffs must provide preponderance of the evidence that the defendants had knowledge of and agreed to both the objective and the course of action that resulted in the injury, that there was a wrongful act committed pursuant to that agreement, and that there was resulting damage suffered by Plaintiff. When successful, Plaintiff may request the court to award her actual damages and punitive damages. Civil Code section 3294 provides in pertinent part: "[W]here the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. "As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damage on all of them, regardless of whether they actually commit the tort themselves. (Unruh v. Truck Insurance Exchange (1972) 7 Cal. 3d 616, 631 [102 Cal. Rptr. 815, 498 P.2d 1063].) "The effect of charging ... conspiratorial conduct is to implicate all ... who agree to the plan to commit the wrong as well as those who actually carry it out. [Citations.]" (Black v. Sullivan (1975) 48 Cal. App. 3d 557, 566 [122 Cal. Rptr. 119].)

In the present case, starting as early as October 2017, Plaintiff 1, who faced a staggering debt of $196,686.11 in Chapter 13 bankruptcy, agreed to accept the loan broker services of Defendant 1 to refinance her primary residence, Property 1. Defendant 1 proceeded to fill out Form 1003 Uniform Residential Loan Application to submit to a lender or lenders of Defendant's 1 choice. Plaintiff 1 had no saying as to what lender would be involved. She solely and completely relied on the expertise and professional know how of Defendant 1 to give her the best possible loan. Personal

information was provided by Plaintiff 1 however the Final form 1003 shows information that is not truthful and not representative of the facts provided by Plaintiff 1. Plaintiff 1 who is without formal education and does not speak English, was provided with little or no explanation in her native Spanish language of each section of the form's contents and purpose. False information entered into the form includes the fact that Property 1 was declared to be an investment property, that Plaintiff 1 was declared to own assets that did not exist such as $35,000 worth of furniture, included non existing employment income of $18,500 per month, while in reality Plaintiff 1 owns a restaurant that she works in, full time, as a self employed individual and makes around $13,000 per month. Her chapter 13 bankruptcy debt, her self employment, and her very large debt was never mentioned. Also a false rental income for the same property was claimed in the amount of $3,800.00. Defendant 2 received and approved the information provided to them by Defendant 1.

Now coming the requirements to prove that a conspiracy existed between Defendant 1 and 2 it is necessary to first prove that there was a legal duty of care toward Plaintiff 1.
Civil conspiracy "allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles." (Applied Equip. Corp. v. Litton Saudi Arabia Ltd. (1994) 7 Cal. 4th 514.) In other words, "before one can be held liable for civil conspiracy, he must be capable of being individually liable for the underlying wrong as a matter of substantive tort law, And that requirement, of course, means he must have owed a legal duty of care to the plaintiff, one that was breached to the latter's injury." (Chavers v. Galtke Corp. (2003) 107 Cal. App. 4th 606, 612.)

As indicated above there is a requirement of the defendants to have a legal duty of care to the plaintiff. As to Defendant 1, this duty requirement is fulfilled under Cal Civ Code section 2923.1(a) where the code provides that " (a) A mortgage broker providing mortgage brokerage services to a borrower is the fiduciary of the borrower, and any violation of the broker's fiduciary duties shall be a violation of the mortgage broker's license law. This fiduciary duty includes a requirement that the mortgage broker place the economic interest of the borrower ahead of his or her own economic interest. A mortgage broker who provides mortgage brokerage services to the borrower owes this fiduciary duty to the borrower regardless of whether the mortgage broker is acting as an agent for any other party in connection with the residential mortgage loan

transaction". Here Defendant 1 approached Plaintiff 1 with an offer of his services and Plaintiff 1 agreed thus stablishing a relationship of duty of care in which Plaintiff 1 relied completely in Defendant 1's services. This duty of care was breached on the submission of false information to the Defendant 2 with the purpose of having the loan approved. Defendant 1, charged 2% fee $20,400 among other miscellaneous fees.

Defendant 2, on the other hand had, a duty to verify all information for the benefit of themselves if not to the borrower, "if the lender is aware of certain facts which suggests that the transaction is suspicious, the lender has a duty to investigate further." *Johnson v. Deutsche Bank Nat. Trust Co.*, No. B223188, 2011 WL 3675691 (Cal. Ct. App. Feb. 13. 2014);

Defendant 2 may claim that he found the transaction not to be suspicious, this cannot be true considering the lack of supporting documentation to the alleged income claimed in the loan application. This claim further weakens when Defendant 2 charged 4% origination fee or $41,250.00 among other fees. By accepting this loan application without further questioning or verification Defendant 2 made over $41,000.00 in upfront fees that had no real basis except the fact that Plaintiff 1 was viewed as an easy target for extremely profitable junk fees. Further gains came in terms of the upfront 12 months reserve charged at escrow $105,780.00. This intentional act confirmed Defendant 2 his gain for the next 12 months up until the time Plaintiff 1 had to refinance again due to her inability to pay not even 1 month worth of interest payments.

Therefore Defendant 1 and Defendant 2 knew as to the falsity of the information, the first because he constructed the false facts and the second because he was to profit then and in the near future once Plaintiff 1 was placed into the never ending loop of refinancing.

Plaintiff 1 further contends that Defendant 1 and 2 knew each other and entered with each other to find and exploit borrowers such as Plaintiff 1 since it was Defendant 1 who submitted the loan to Defendant 2.

On SECOND LOAN, DEFENDANT 2 did not use any an intermediary but rather he served as the preparer of documents approving the same false information without question. Further proving his knowledge of the falsity of facts as indicated above.

Plaintiff 1 received damages in the form of 1) large amounts of money lost in junk fees originations fees, $61,890 2) made to enter into a debt that was a set up for foreclosure,

1  All the above pertains to the FIRST LOAN. There comes SECOND LOAN, THIRD LOAN and

2  FOURTH LOAN all worked out in exactly the same manner. Same methodology of falsifying

3  information and submitting it to DEFENDANT 2's underwriting who quickly and eagerly

4  accepted. Thus perpetrating the never ending cycle of refinancing under terms that serve the

5  purpose of perfecting a scheme whose purpose was to trap Plaintiff 1 and eventually Plaintiff 2 as

   well, on a financial "treadmill" from which they could not escape. Once trapped by the

6  unexpectedly large balloon payment due at the end of the first loan, the respondents found

7  themselves forced to refinance the loan, much as DEFENDANT 2 planned together with

8  DEFENDANT 1 and DEFENDANT 3. Any efforts by Plaintiff 1 and Plaintiff 2 to obtain

9  financing from other sources failed due to the extremely high debt that could not be truthfully

10 supported by Plaintiffs' true income. This permitted the repetitive collection of brokerage fees and

11 late charges from respondents, depleting their resources and moving foreclosure ever closer.

12

13 Total damages in loan fees alone incurred by the Plaintiffs in this scheme is :

14 FIRST LOAN $64,890.00

   SECOND LOAN $63,412.50

15 THIRD LOAN $84,480.00

16 FOURTH LOAN $14,600.00

17        Total       $227,382.50

18

19                    **SECOND CAUSE OF ACTION**

20                        (For Mail Fraud )

21

22 Although Plaintiff does not know the true names and capacities of those involved in the decision

23 making of the every day business of each of the defendants, it is only known thus far through the

   dealings that came to this claim that DEFENDANT 2 is Yeva, Inc DBA SAXE Mortgage

24 Company located at 950 John Daly Blvd Suite 200 Daly City, DEFENDANT 1 is CNA Equity

25 Group, Inc. located at 2303 Camino Ramon #160, San Ramon CA 94583, and Home Sweet Home

26 Realty and Funding located at 6254 Geary Boulevard San Francisco, CA 94121 all Corporations

27 registered with the California Secretary of State.

28

Plaintiffs have shown the acts committed by DEFENDANT 2 in conjunction with DEFENDANT 1 for the perpetration of FIRST LOAN, DEFENDANT 2 in conjunction with DEFENDANT 3 in the perpetration of THIRD LOAN, and DEFENDANT 2 acting alone as loan loan broker and lender in the perpetration of SECOND LOAN, and DEFENDANT 2 as lender for FOURTH LOAN, acts that show the intent and over act to lie in HUD Form 1003 (Loan Application) for the purpose of approving a loan that far surpassed the ability to both qualify and repay the loans for which Plaintiff 1 and 2 signed Notes and Deeds of Trust. Plaintiff has also shown the legal duty of care that each of the Loan Brokers had toward Plaintiffs namely DEFENDANTS 1 and DEFENDANT 3. Plaintiffs have also shown that Plaintiff relied on the services that all DEFENDANTS in the obtaining of a mortgage loan that was fair and just. Plaintiff also shown the monetary damages incurred by the Plaintiff due to their reliance in DEFENDANTS' expertise and recommendation. All of these same shown facts and their outcomes are brought forth to the meet the elements of this cause of action for Mail Fraud.

Under 12 U.S.C. § 1833a(c)(1) (1996), a violation of FIRREA occurs when there is a violation of, or conspiracy to violate the following, 18 U.S.C. § 1014 (2009): false loan or credit applications, and under 12 U.S.C. § 1833a(c)(2) , violation of, or conspiracy to violate the following,18 U.S.C. § 1341 (2009): mail fraud

Further more, the Fraud Enforcement and Recovery Act of 2009 (FERA) redefined "financial institution" to include "mortgage lending businesses." See 18 U.S.C. § 20 (2009). A mortgage lending business is defined as "an organization which finances or refinances any debt secured by an interest in real estate, including private mortgage companies and any subsidiaries of such organizations, and whose activities affect interstate or foreign commerce." FERA, Pub. L. No. 111-21, § 27, 123 Stat. 1617 (2009). Thus, any mortgage fraud committed against a mortgage lending business after May 20, 2009 may be a violation of 18 U.S.C.§ 215 or § 1344, and consequently a violation of FIRREA. DEFENDANT 2 is a lender in the mortgage lending business, that either lied in in order to sell to a federally insured institution in order to sell the loan to the Federal any violation of afore mentioned section.

Here the facts indicate that on each loan application submitted to the underwriting department of DEFENDANT 2, either by a conspiring loan broker DEFENDANT 1 and DEFENDANT 3 for FIRST LOAN and THIRD LOAN and FOURTH LOAN, or by a loan officer working within the premises and under the employment of DEFENDANT 2 for SECOND LOAN, there was material information that was omitted or lied about. This is a violation of 18 U.S.C. § 1014 (2009): false loan or credit applications.

Now to confront the violation of 12 U.S.C. § 1833a(c)(2), violation of, or conspiracy to violate the following, 18 U.S.C. § 1341(2009): mail fraud. Here comes that for every escrow opened in the regular course of the loan process each DEFENDANT communicated via email and mail (by federal couriers) either with Escrow Company, Plaintiffs, and or both at the same time. They all kept communicating by sending and receiving escrow instructions, payoff demands, disclosures request for signatures and funds due to or from Plaintiffs all the while in reliance of false information and with the purpose to send over email, mail and courier false information or the fruits of false information. Thus violating the section above cited.

Total damages in loan fees alone incurred by the Plaintiffs under this cause of action reflects the same damage suffered by the conspiracy to defraud that is :

FIRST LOAN $64,890.00

SECOND LOAN $63,412.50

THIRD LOAN $84,480.00

FOURTH LOAN $14,600.00

    Total    $227,382.50

## STATUTE OF LIMITATIONS

With regards to the statute of limitations

    This case involves multiple loans over a period starting at the end of 2017 and continuing on to the present date. Then it is imperative to touch upon the issue of Statutes of Limitations which for a civil complaint of conspiracy to commit fraud is 2 years.

    Statutes of limitations have, as their general purpose, to provide repose and to protect persons against the burden of having to defend against stale claims. fn. 3 (Telegraphers v. Ry.

1. Express Agency (1944) <u>321 U.S. 342</u>, 348-349 [88 L. Ed. 788, 792-793, 64 S. Ct. 582]; Shain v.
2. Sresovich (1894) 104 Cal. 402, 406 [38 P. 51].) So long as a person continues to commit wrongful
3. acts in furtherance of a conspiracy to harm another, he can neither claim unfair prejudice at the
4. filing of a claim against him nor disturbance of any justifiable repose built upon the passage of
5. time.
6.       In the present case, Defendant 2 stands accused of continuing their tortious conduct in
7. furtherance of the conspiracy up until -- and even after -- the filing of the complaint. It was their
8. own conduct that kept the cause of action against them alive. There is a consistent line of cases
9. that have applied the "last overt act" doctrine to civil conspiracies. (Bedolla v. Logan & Frazer
10. (1975) <u>52 Cal. App. 3d 118</u>, 136-137 [125 Cal. Rptr. 59]; Kenworthy v. Brown (1967) <u>248 Cal.</u>
11. <u>App. 2d 298</u>, 301 [56 Cal. Rptr. 461]; Schessler v. Keck, supra, 125 Cal.App.2d at pp. 832-833.)
12. fn. 4 **[24 Cal. 3d 788]**
13. On the week of November 6, 2023, DEFENDANT 2 filed a Notice of Default on Property 1 as the
14. last overt act over a long stream of acts that had since the beginning the very intent to take as
15. much money as possible until Plaintiff 1 lost Property 1 to foreclosure.

## DAMAGES – REQUEST FOR RELIEF

17. So here comes the Plaintiffs and upon having proven the causes of action named above request
18. that this court awards them with the following:

19.       For this court to stop foreclosure proceedings. For this court to demand that DEFENDANT
20. 2 modifies both loans of Property 1 and Property 2 to terms that reflect the unaltered facts and
21. financial capacity of Plaintiff 1 and Plaintiff 2 to periods of amortization of at least 40 years and
22. current interest rates for conventional loans Federally Insured, without the charging of origination
23. fees or any other junk fee.

25.       For general damages in the sum of $500,000.00;

27.       For damages for the origination fees and junk fees charged in the sum of $227,382.50;

28.       For punitive damages in the sum of $2,000,000.00;

For costs of suit incurred herein; and

For such other and further relief as the court may deem proper.

DATE: _11-17-2023_

_[signature]_

Jose Rene Barboza

In Pro Per

DATE: _11/17/2023_

_[signature]_

Daysi Orbelina Romero

In Pro Per

VERIFICATION

I, _Daysi O Romero_ , am a _plaintiff_ in the above-entitled action. I have read the foregoing _Complaint_ and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at _Daly C ty_ , California.

DATE: _11/17/2023_

_[signature]_

(Signature)

## BALLOON PAYMENT NOTICE

November 30, 2023

Daysi O. Romero
3829 Mission Street
San Francisco, CA 94110

Property Addresses:   77 Benton Avenue, San Francisco, CA 94112

Dear Borrower:

### THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

This office is acting as agent for UMBERT VON HOFEN 5.09%, LILLIAN MARTINEZ, RAQUEL MARTINEZ 4.20%, MARJORIE HILSENRAD REVOCABLE 5.60%, NORMAN SCHULTZ 10.1%, CRAIG JOHNSON 15.2%, ROBERT, KATHERIN WILLIAMSON 12.2%, ROBERT DEMYANOVICH 5.40%, JAMES FOWLER 13.4%, THOMAS LAPUYADE 18.34%, LAURIE HALL REVOCABLE 10.19% INTEREST as Beneficiary C/O **Saxe Mortgage Co.**, we have been instructed to contact you regarding your default in connection with the Promissory Note and Deed(s) of Trust executed by you on 1/12/2021.

As Trustor of the Real Estate securing the Deed(s) of Trust dated 1/12/2021 a final BALLOON PAYMENT on the Promissory Note and Deed of Trust became all due and payable on 1/12/2021 according to all the terms and conditions of the original Promissory Note.

**Please be advised that the current Beneficiary will be calling this Promissory Note all Due and Payable on 2/1/2024. Pursuant to** *California Civil Code 2966* **please consider this letter as a formal <u>90-150 DAY WRITTEN NOTICE</u>, sent by regular first class and certified mail. Your payoff needs to be received not later than 2/1/2024.**

The principal balance of **$1,962,000.00** will be due with interest thereon at 12.5% from 08/01/2013. The **approximate** amount to pay off your loan as of the date of this letter is **$1,962,000.00** <u>To confirm exact figures please call or submit a payoff request to:</u> SAXE MORTGAGE COMPANY, 950 JOHN DALY BLVD., STE. 200, DALY CITY, CA 94015 PHONE: 650-755-7293.

All payments shall be made in the form of, made payable to **Saxe Mortgage Co.,** and delivered to: SAXE MORTGAGE COMPANY, 950 JOHN DALY BLVD., STE. 200, DALY CITY, CA 94015. Any additional payments, late charges, advances, attorney fees and costs becoming due, and owing must be remitted with the amounts demanded herein.

For any questions, and **to find out the exact amount due** on your loan, please contact, SAXE MORTGAGE COMPANY, 950 JOHN DALY BLVD., STE. 200, DALY CITY, CA 94015. PHONE 650-755-7293.

This loan is not subject to a refinance with, UMBERT VON HOFEN 5.09%, LILLIAN MARTINEZ, RAQUEL MARTINEZ 4.20%, MARJORIE HILSENRAD REVOCABLE 5.60%, NORMAN SCHULTZ 10.1%, CRAIG JOHNSON 15.2%, ROBERT, KATHERIN WILLIAMSON 12.2%, ROBERT DEMYANOVICH 5.40%, JAMES FOWLER 13.4%, THOMAS LAPUYADE 18.34%, LAURIE HALL REVOCABLE 10.19% INTEREST as CERTIFIED FUNDS, Beneficiary.

**UNLESS YOU NOTIFY US WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS LETTER THAT THE DEBT OR ANY PART OF IT IS DISPUTED, WE WILL ASSUME THAT THE DEBT IS VALID. ALSO, UPON YOUR REQUEST, WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS LETTER, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT CREDITOR.**

If you wish to discuss this letter, please contact the undersigned.

Sincerely,

Saxe Mortgage Company

Gene Kristul
President



# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package



> The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

## WHY CHOOSE ADR?

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***

## WHAT ARE THE ADR OPTIONS?

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

## 1) MANDATORY SETTLEMENT CONFERENCES

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

Case: 23-41294   Doc# 59   Filed: 03/19/24   Entered: 03/19/24 13:22:46   Page 20 of 43

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

(A) **MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF)**, in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

(B) **JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

(C) **PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

(D) **COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

Case: 23-41294    Doc# 59    Filed: 03/19/24    Entered: 03/19/24 13:22:46    Page 21 of
43

## 3) ARBITRATION

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

### (A) JUDICIAL ARBITRATION

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

### (B) PRIVATE ARBITRATION

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

Case: 23-41294   Doc# 59   Filed: 03/19/24   Entered: 03/19/24 13:22:46   Page 22 of 43

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name *and address*) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: | |
| ATTORNEY FOR *(Name)*: | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: _____<br><br>DEPARTMENT 610 |
|---|---|

**1)**  **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days ☐ 90-120 days ☐ Other (please specify) _____

☐ **Other ADR process (describe)** _____

**2)** The parties agree that the ADR Process shall be completed by (date): _____
**3)** Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____
Name of Party Stipulating

_____
Name of Party or Attorney Executing Stipulation

_____
Signature of Party or Attorney

☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Dated: _____

_____
Name of Party Stipulating

_____
Name of Party or Attorney Executing Stipulation

_____
Signature of Party or Attorney

☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Dated: _____

☐ *Additional signature(s) attached*

ADR-2  10/18       **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

**VERIFICATION**

I, _Jose R Barbara_, am a _Plaintiff_ in the above-entitled action. I have read the foregoing _Complaint_ and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at _Daly City_, California.

DATE: _11-17-2023_

_(signature)_

(Signature)

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Stuart G. Gross (#251019)<br>Gross Klein PC<br>The Embarcadero, Pier 9, Suite 100<br>San Francisco, CA 94111<br><br>TELEPHONE NO.: (415) 671-4628  FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: sgross@grosskleinlaw.com<br>ATTORNEY FOR *(Name)*: Defendant Yeva, Inc. | **ELECTRONICALLY**<br>**F I L E D**<br>*Superior Court of California,*<br>*County of San Francisco*<br><br>**02/13/2024**<br>**Clerk of the Court**<br>BY: RONNIE OTERO<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN FRANCISCO
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME:

PLAINTIFF/PETITIONER:  Jose Rene Barboza, et al.

DEFENDANT/RESPONDENT:  Yeva, Inc., et al.

| NOTICE OF STAY OF PROCEEDINGS | CASE NUMBER:<br>CGC-23-610638 |
|---|---|
| | JUDGE:<br>DEPT.: |

**To the court and to all parties:**

1. Declarant *(name):* Stuart G. Gross

   a. [x] is  [ ] the party   [x] the attorney for the party    who requested or caused the stay.

   b. [ ] is  [ ] the plaintiff or petitioner   [ ] the attorney for the plaintiff or petitioner.  The party who requested the stay has not appeared in this case or is not subject to the jurisdiction of this court.

2. This case is stayed as follows:

   a. [x]  With regard to all parties.

   b. [ ]  With regard to the following parties *(specify by name and party designation):*

3. Reason for the stay:

   a. [x]  Automatic stay caused by a filing in another court. *(Attach a copy of the Notice of Commencement of Case, the bankruptcy petition, or other document showing that the stay is in effect, and showing the court, case number, debtor, and petitioners.)*

   b. [ ]  Order of a federal court or of a higher California court. *(Attach a copy of the court order.)*

   c. [ ]  Contractual arbitration under Code of Civil Procedure section 1281.4. *(Attach a copy of the order directing arbitration.)*

   d. [ ]  Arbitration of attorney fees and costs under Business and Professions Code section 6201. *(Attach a copy of the client's request for arbitration showing filing and service.)*

   e. [ ]  Other:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: February 13, 2024

Stuart G. Gross
_____
(TYPE OR PRINT NAME OF DECLARANT)

▶  _____
(SIGNATURE)

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-180 [Rev. January 1, 2007]

**NOTICE OF STAY OF PROCEEDINGS**

Cal. Rules of Court, rule 3,650<br>www.courts.ca.gov

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

NORTHERN DISTRICT OF CALIFORNIA

Case number *(if known)* _____    Chapter    **11**

☐ Check if this an
amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy          06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **CNA Equity Group, Inc.** |
| 2. | **All other names debtor used in the last 8 years** <br> Include any assumed names, trade names and *doing business as* names | **FDBA  Platinum One Realty and Mortgage** |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **26-1975660** |

| | | | |
|---|---|---|---|
| 4. | **Debtor's address** | **Principal place of business** | **Mailing address, if different from principal place of business** |
| | | **2303 Camino Ramon, Ste 160** <br> **San Ramon, CA 94583** <br> Number, Street, City, State & ZIP Code | _____ <br> P.O. Box, Number, Street, City, State & ZIP Code |
| | | **Contra Costa** <br> County | **Location of principal assets, if different from principal place of business** |
| | | | _____ <br> Number, Street, City, State & ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | _____ |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP)) |
| | | ☐ Partnership (excluding LLP) |
| | | ☐ Other. Specify: _____ |

Case: 23-41294    Doc# 1    Filed: 10/06/23    Entered: 10/06/23 14:39:45    Page 1 of 69

Case: 23-41294    Doc# 99    Filed: 03/19/24    Entered: 03/19/24 13:22:46    Page 26 of 43

**7.  Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
   http://www.uscourts.gov/four-digit-national-association-naics-codes.

   ____

**8.  Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

■ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.  Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.
☐ Yes.

| | District | When | Case number |
|---|---|---|---|
| | District _____ | When _____ | Case number _____ |
| | District _____ | When _____ | Case number _____ |

Case: 23-41294    Doc# 1    Filed: 10/06/23    Entered: 10/06/23 14:39:45    Page 2 of 69

Official Form 201      **Voluntary Petition for Non-Individuals Filing for Bankruptcy**                page 2
Case: 23-41294    Doc# 39    Filed: 03/19/24    Entered: 03/19/24 13:22:46    Page 27 of 43

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

■ No
☐ Yes.

List all cases. If more than 1, attach a separate list

| Debtor | | | Relationship | |
|---|---|---|---|---|
| District | | When | Case number, if known | |

**11. Why is the case filed in this district?**

*Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

■ No
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No
☐ Yes. Insurance agency _____
Contact name _____
Phone _____

---

**Statistical and administrative information**

**13. Debtor's estimation of available funds** .

*Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ■ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |

Official Form 201   Voluntary Petition for Non-Individuals Filing for Bankruptcy   page 3

Case: 23-41294   Doc# 1   Filed: 10/06/23   Entered: 10/06/23 14:39:45   Page 3 of 69
Case: 23-41294   Doc# 99   Filed: 03/19/24   Entered: 03/19/24 13:22:46   Page 28 of 43

☐ $50,001 - $100,000          ☐ $10,000,001 - $50 million      ☐ $1,000,000,001 - $10 billion
☐ $100,001 - $500,000         ☐ $50,000,001 - $100 million     ☐ $10,000,000,001 - $50 billion
☐ $500,001 - $1 million       ☐ $100,000,001 - $500 million    ☐ More than $50 billion

| | **Request for Relief, Declaration, and Signatures** |

**WARNING –** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **10/06/2023**
               MM / DD / YYYY

**X** **/s/ Michael Mulry**                                    **Michael Mulry**
     Signature of authorized representative of debtor          Printed name

Title    **President**

**18. Signature of attorney**

**X** **/s/ Chris Kuhner**                                    Date  **10/06/2023**
     Signature of attorney for debtor                               MM / DD / YYYY

**Chris Kuhner 173291**
Printed name

**Kornfield, Nyberg, Bendes, Kuhner & Little P.C.**
Firm name

**1970 Broadway, Ste 600**
**Oakland, CA 94612**
Number, Street, City, State & ZIP Code

Contact phone    **510-763-1000**          Email address  _____

**173291 CA**
Bar number and State

**Fill in this information to identify the case:**

Debtor name **CNA Equity Group, Inc.**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF CALIFORNIA

Case number (if known) _____

☐ Check if this is an amended filing

## Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

■    *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

■    *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

■    *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

■    *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

■    *Schedule H: Codebtors* (Official Form 206H)

■    *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐    Amended *Schedule* _____

☐    *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐    Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **10/06/2023**              X **/s/ Michael Mulry**
_____                  Signature of individual signing on behalf of debtor

                                         **Michael Mulry**
                                         Printed name

                                         **President**
                                         Position or relationship to debtor

Case: 23-41294    Doc# 1    Filed: 10/06/23    Entered: 10/06/23 14:39:45    Page 6 of 69
Case: 23-41294    Doc# 59    Filed: 03/19/24    Entered: 03/19/24 13:22:46    Page 31 of 43

**PROOF OF SERVICE**

I, Ian Atkinson-Young, declare:

I am a citizen of the United States and employed in San Francisco, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is Pier 9, Suite 100, The Embarcadero, San Francisco, CA 94111.  On February 13, 2024, I served a copy of the following documents:

**NOTICE OF STAY OF PROCEEDINGS**

☒ **BY MAIL:** I am familiar with the business practice for collection and processing of mail. I enclosed the above-described documents in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at Beaverton, OR on this date, to the following addresses.

| | |
|---|---|
| Jose Rene Barboza and Daysi O Romero<br>3829 Mission St<br>San Francisco, CA 94110 | *Plaintiffs in pro per* |

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed February 13, 2024.

By: _____

Ian Atkinson-Young

1  STUART G. GROSS (#251019)
   sgross@gross-law.com
2  ROSS A. MIDDLEMISS (#323737)
   rmiddlemiss@grosskleinlaw.com
3  **GROSS KLEIN PC**
4  The Embarcadero
   Pier 9, Suite 100
5  San Francisco, CA 94111
   t (415) 671-4628
6  f (415) 480-6688
7

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**02/22/2024**
**Clerk of the Court**
BY: JEFFREY FLORES
Deputy Clerk

8  Counsel for Defendant Yeva, Inc.

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11       IN AND FOR THE COUNTY OF SAN FRANCISCO

12

| | |
|---|---|
| 13  **JOSE RENE BARBOZA AND DAYSI O ROMERO;** | Case No. CGC-23-610638 |
| 14       Plaintiffs, | **DEFENDANT YEVA, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT** |
| 15  v. | |
| 16 | |
| 17  **YEVA, INC. DBA SAXE MORTGAGE COMPANY, CNA EQUITY GROUP, INC., HOME SWEET HOME REALTY AND FUNDING; DOES I through X, inclusive, and ROE Business Entities I through X, inclusive;** | |
| 18 | |
| 19 | |
| 20       Defendants. | |

21
22
23
24
25
26
27
28

*(left margin, vertical text)* GROSS KLEIN PC · THE EMBARCADERO · PIER 9, SUITE 100 · SAN FRANCISCO, CA 94111

FENDANT YEVA, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT: Case No. CGC-23-610638

1

EXHIBIT 3

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

1    Defendant Yeva, Inc. dba Saxe Mortgage ("Saxe" or "Defendant"), by and through

2    undersigned counsel, hereby answers the allegations in Plaintiffs Jose Rene Barboza and Daysi O.

3    Romero's (collectively, "Plaintiffs") Complaint ("Complaint"). Defendant understands this case

4    to be stayed pursuant to the Notice of Stay filed by Defendant on February 13, 2024, and does

5    not, by filing this Answer, challenge or call into question the validity of the stay. Defendant files

6    this Answer out of an abundance of caution, having not received an affirmative confirmation of

7    the stay from this Court, so as not to forfeit its ability to fully contest the Complaint in the event

8    the action is not stayed. Defendant answers the Complaint as follows:

9    1.    Pursuant to Code of Civil Procedure Section 431.30(b)(1), Plaintiff denies each and

10    every allegation of the Complaint, and further denies that Plaintiffs are entitled to any equitable or

11    legal relief, or any damages whatsoever.

12    2.    Defendant asserts the following affirmative defenses. By doing so, Defendant shall

13    not be deemed to have assumed the burden of proving any matters that otherwise would be

14    Plaintiffs' burden.

15    **FIRST AFFIRMATIVE DEFENSE**

16    The Complaint and each cause of action is barred because Plaintiffs fail to state a cause of

17    action against Defendant.

18    **SECOND AFFIRMATIVE DEFENSE**

19    Defendant alleges, if Plaintiffs were injured (which Defendant denies), that the fault of

20    persons other than answering Defendant contributed to and proximately caused such injury in

21    whole or in part.

22    **THIRD AFFIRMATIVE DEFENSE**

23    Plaintiffs' claimed losses and/or damages, the existence of which Defendant specifically

24    denies, do not result from the acts or omissions of Defendant, or persons for whom Defendant is

25    legally responsible.

26    **FOURTH AFFIRMATIVE DEFENSE**

27    Plaintiffs' Complaint is barred under the doctrine of laches.

28

DEFENDANT YEVA, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT; Case No. CGC-23-610638

2

1            **FIFTH AFFIRMATIVE DEFENSE**

2     Plaintiffs' Complaint is barred by the applicable statute(s) of limitations.

3            **SIXTH AFFIRMATIVE DEFENSE**

4     Plaintiffs' Complaint is barred, by virtue of Plaintiffs' and/or Plaintiffs' insured's acts and

5 omissions, by the doctrine of unclean hands and/or in pari delicto.

6           **SEVENTH AFFIRMATIVE DEFENSE**

7     Plaintiffs' Complaint is barred by the doctrines of estoppel and/or waiver.

8            **EIGHTH AFFIRMATIVE DEFENSE**

9     Plaintiffs' Complaint is barred by the terms and conditions of all applicable agreements

10 and governing documents.

11            **NINTH AFFIRMATIVE DEFENSE**

12     Plaintiffs' Complaint is barred because Defendant acted at all times in good faith.

13            **TENTH AFFIRMATIVE DEFENSE**

14     Plaintiffs' Complaint is barred by Plaintiffs' fraud.

15           **ELEVENTH AFFIRMATIVE DEFENSE**

16     Plaintiffs' Complaint is barred by the doctrine of unjust enrichment.

17           **TWELFTH AFFIRMATIVE DEFENSE**

18     Plaintiffs' Complaint is barred by Plaintiffs' lack of standing to bring the causes of action

19 asserted therein.

20          **THIRTEENTH AFFIRMATIVE DEFENSE**

21     Alternatively, and without conceding the truth of any allegation by Plaintiffs, Plaintiffs

22 have failed to mitigate their damages as required by law.

23         **FOURTEENTH AFFIRMATIVE DEFENSE**

24     Plaintiffs and/or Plaintiffs' insured are barred from any recovery against Defendant

25 because in connection with Defendant's dealings with Plaintiffs, Defendant at all times acted

26 fairly and in good faith and abided by honored and acted in accordance with the agreements,

27 policies, practices and procedures that governed the relationship between them.

28

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

GROSS KLEIN PC
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA 94111

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims for damages are precluded to the extent those alleged damages are speculative.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendant states that, if Plaintiffs were injured (which Defendant denies), Plaintiffs' injuries were caused by the negligence or other act or omission of third parties, and Defendant is entitled to equitable and/or statutory indemnity from such third parties.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Defendant states that, if Plaintiffs were injured (which Defendant denies), Plaintiffs' injuries were caused by their own negligence or other act or omission of themselves.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to amend their Answer to assert any additional defenses, if and when, in the course of its investigation, discovery, or preparation for trial, such defenses become known and/or it otherwise becomes appropriate to assert such defenses.

WHEREFORE, Defendant requests judgment as follows:

1. That Plaintiffs take nothing by the Complaint, which will be dismissed with prejudice.

2. Defendant be awarded attorneys' fees and costs of suit as provided by law; and

3. For such other and further relief which the Court deems necessary, just and proper.


DATED: February 22, 2024

GROSS KLEIN PC

By:    /s/ Stuart G. Gross
STUART G. GROSS

Counsel for Defendant Yeva, Inc.

---

DEFENDANT YEVA, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT; Case No. CGC-23-610638

4

Case: 23-41294   Doc# 59   Filed: 03/19/24   Entered: 03/19/24 13:22:46   Page 37 of
43

**PROOF OF SERVICE**

I, Ian Atkinson-Young, declare:

I am a citizen of the United States and employed in San Francisco, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is Pier 9, Suite 100, The Embarcadero, San Francisco, CA 94111.  On February 22, 2024, I served a copy of the following documents:

**DEFENDANT YEVA, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT**

☒ **BY MAIL:** I am familiar with the business practice for collection and processing of mail. I enclosed the above-described documents in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at Beaverton, OR on this date, to the following addresses.

☒ **BY EMAIL:** By causing a copy of said document(s) to be transmitted by e-mail to the email address listed on this Certificate of Service.

| | |
|---|---|
| Jose Rene Barboza and Daysi O Romero<br>3829 Mission St<br>San Francisco, CA 94110<br>jbarboza1994@gmail.com | Plaintiffs in pro per |

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed February 22, 2024.

By: _____

Ian Atkinson-Young

GROSS KLEIN PC

PROOF OF SERVICE; CASE NO. CGC-23-610638

1

# SAXE MORTGAGE COMPANY

## BROKER AGREEMENT

AGREEMENT made this _10th_ day of _June_ , 20 _14_ by and between YEVA, Inc.,

DBA Saxe Mortgage Company, a California corporation, having a principal office at 950 John Daly Blvd.,

Suite 200, Daly City , CA 94015, hereinafter referred to as "Saxe" and

_CNA Equity Group, Inc._ , having a principal office at _2410 Camino Ramon suite 324, San Ramon CA 94583_

hereinafter referred to as "Broker".

### RECITALS

WHEREAS, YEVA Inc., DBA Saxe Mortage Company, a California corporation is a private money lender which funds mortgage loans.

WHEREAS, Broker is a duly licensed mortgage broker who desires to originate, process and package mortgage loan applications for funding by Saxe Mortgage Company.

Now, therefore in consideration of the mutual covenants and agreements contained herein and for good and valuable consideration received by and between the parties hereto, the parties agree to enter into this Broker Agreement on the following terms:

Broker hereby represents, warrants, covenants and agrees:

a. That Broker is and shall be, in originating any loans for funding by Saxe, licensed under and in strict and full compliance with Laws of the state in which the Broker transacts business.

b. That Broker shall comply strictly with, and shall cause all personnel employed by Broker to comply with all applicable federal, state, and local laws, regulations, rules and ordinances of governmental authorities in connection with all activities of Broker and Saxe, including without limitation, the laws mentioned in the preceding paragraph. The Real Estate Settlement Procedures act 1974, as amended the Fair Credit Reporting Act, as amended, and all other applicable laws and regulations.

c. That Broker shall provide all documentation, facts, information and other assistance as may be required or otherwise requested by Saxe, relating to the origination, application, processing, funding and closing of any loans originated by Broker.

d. That Broker shall make prompt, timely, full, accurate and truthful disclosure to Saxe. In each mortgage loan package submitted of all facts, information and documentation which Broker may know, suspect or have actual or constructive notice of, which could or may effect the creditworthiness of the borrower, validity, collectability, security and or enforceability of all loans originated by Broker for funding by Saxe, including all facts, information and documentation relating to any disputes, proceedings, litigation or governmental action threatened, anticipated, or pending respecting the borrowers, the subject real property, or the loan transaction, as well as all facts, information and documentation relating to the borrowers or to the value to condition of the property. Any alteration, deterioration, waste or destruction (complete or partial) or other damage or injury tot he property which would effect its value or condition or otherwise affect or impair any security to be granted to Saxe, or its assignees, or successors. Upon funding of such

EXHIBIT 4

loan and any appraisal covering the subject property which determines a property value lower than that previously disclosed to Saxe, or which discloses any other facts or information material to the subject property or to the proposed mortgage loan which has not theretofore been disclosed to Saxe, shall be disclosed by Broker to Saxe immediately upon the Broker's first ascertaining such facts or information, and in any event, not later the Broker should exercise reasonable diligence, first have become aware of such facts or information.

e. That the information provided by Broker to Saxe on the Loan Broker Application Submitted in connection herein, which is incorporated herein for all purposes, and upon which Saxe has relied, is true, accurate, and correct and that:

(i) After diligent inquiry, Broker has no knowledge of any circumstances or conditions with respect to any loan, mortgaged property, mortgagor or mortgagor's credit standing that can be reasonably expected to cause institutional investors to regard any loan to become delinquent, or adversely effect the value or marketability of any loan;

(ii) To the best of the Brokers knowledge and belief, no fraudulent "information" has been provided to Saxe with respect to a loan submitted to Saxe for funding. For purposes hereof, the term "information" shall mean any and all information obtained from the borrower or any reference source that would according to standard practice and procedures in the mortgage lending industry be in the control and knowledge of Broker, as well as any appraisal related information that is a result of or is communicated because of, any relationship transaction between appraiser and Broker. In this regard and without limiting the generality of the foregoing, Broker agrees to exercise a more stringent level of due diligence with respect to the following terms of "information" which are known to be the most common areas of fraudulent loan activity:

(a) Appraisal of the property;

(b) Verifications of Employment;

(c) Verification of Deposit;

(d) Profit and Loss Statements;

(e) Borrowed funds disguised as cash gifts.

f. That the forms and documents that Broker shall submit to Saxe in connection with origination services to be performed hereunder shall be the standard forms and documents commonly used in the industry for the particular type of loan applied for by the borrower.

g. That Broker shall make no misrepresentation or misstatement of any material fact whether by act, statement, concealment or omission, in connection with any loan originated by Broker for funding by Saxe.

h. That to the best of the Broker's knowledge and belief, all documentation submitted by the Broker in connection with loan packages submitted to Saxe are in every respect valid and genuine, being what on their face they purport to be and all information (credit or otherwise) submitted in connection with such loan packages is true and accurate.

i. That Broker shall indemnify and hold harmless Saxe from any and all loss, injury, damage, and/or liability resulting or claimed to have resulted by any person, from

(i) any breach of Broker covenants, representations or warranties under this Agreement, or

(ii) otherwise arising from or relating to any acts or omissions, whether willful, negligent or otherwise, of Broker, its employees or agents, or

(iii) the borrower for whom the Broker is acting as agent in connection with any loan to be originated by Broker hereunder. Such indemnification shall include, but not be limited to the following: all related losses, damages, judgments or legal expenses without limitation the reimbursement to Saxe of any brokerage fees paid by Saxe to Broker with respect to the loan, actual attorney's fees incurred, appraiser's costs, investigator's fees, expert's fees, and such other costs and disbursements as may be incurred, appraiser's costs, investigator's fees,expert's fees, and such other costs and disbursements as may be incurred by Saxe in connection with such matters subject to indemnification by Broker.

l.That Broker is an independent contractor and that Broker shall not represent itself in any manner to be the agent, servant, employee, representative, partner or co-venturer of Saxe. Broker shall have no authority to solicit, bind, or commit Saxe to any contract or transaction, whether for replacement of a loan or for any other purpose, and Broker shall not represent in any manner to anyone that Broker has such authority.

m. That upon the occurrence of any one of the following events, Broker will within ten (10) days of written notice from Saxe, repurchase any loan at the price paid by Saxe or received by Saxe from the secondary purchaser (if funded by Saxe), with appropriate adjustments for payments received by Saxe:

(i) In the event of breach by Broker of any warranty, representation or covenant contained in this Agreement; or

(ii) In the event of Saxe receiving a repurchase order with respect to a loan originated by Broker from the secondary market investor to whom Saxe sold the subject loan; or

(iii) Upon discovery by Saxe that any representation or warranty made by Broker is materially untrue, inaccurate or misleading or when coupled with additional facts, misleads Saxe to purchase or fund a loan, whether or not Broker had actual knowledge of such untruth or inaccuracy.

The parties hereto further covenant and agree as follows:

n. Saxe, in its sole and absolute discretion, may elect to accept or reject any mortgage loans originated and submitted to it by Broker under Agreement.

o. This Agreement shall be in effect for a term commencing on the date of this Agreement and terminating immediately upon notice either by Saxe or Broker, in writing and actually delivered to the other party, stating that the party giving notice elects to terminate this Agreement. This Agreement shall terminate promptly upon giving such notice, without cause and without necessity for the stating of cause. Any such termination shall, however, not affect the coverage of, or effectiveness of this Agreement with respect to Saxe prior to the receipt by Saxe of the aforementioned notice of termination. This Agreement shall remain in full force with respect to every loan originated or funded under this Agreement, notwithstanding any later termination, with respect to the representations, warranties and agreements of the Broker set forth

herein, until the repayment in full or other final disposition of the last loan originated under this Agreement to be repaid in full or otherwise disposed of. That the relationship between Saxe and Broker, as provided under this Agreement, is nonexclusive, that Saxe has heretofore entered into arrangements similar to the arrangement made hereunder with any other brokers, and that Saxe intends to enter into, and shall not be restricted by this Agreement from entering into other arrangements similar to the arrangements set forth in this Agreement with other brokers from time with the sole discretion of Saxe and without notice to the Broker.

q. That the nature of this Agreement is personal to Broker and, accordingly, that Broker shall have no right to, and shall not sell, assign or transfer any of Broker's duties and obligations undertaken hereunder.

r. Any fees that the Broker may charge the borrower have been determined by negotiations between borrower and Broker. The total fees to be received by Broker have been separately itemized and fully disclosed to borrower and lender is reasonably related to the market value of the services rendered by Broker in connection with the loan. In no event shall any compensation be paid to Broker unless a loan is funded.

s. General Provisions:

(i) This Agreement shall be governed by the laws of the State of California.

(ii) Venue shall be stipulated to San Francisco County.

(iii) This Agreement shall be null and void and have no further effect unless countersigned by Saxe including approval and acceptance of the below listed Broker.

(iv) Any notice, request for payment, demands or other communications required or permitted to be given pursuant to any provisions of this Agreement shall be in writing and shall be

(a) delivered personally to the party or to an officer of the party to whom the same is directed,

(b) deposited in U.S. mail, postage prepaid,

(c) sent by registered or certified mail, return receipt requested postage and charges prepaid (airmail if intentional and express mail if available),

(d) sent by international air courier, or

(e) transmitted by telex or telecopy, addressed as follows:

If to Saxe: Saxe Mortgage Company, 950 John Daly Blvd., Suite 200, Daly City, California 94015.

If to Broker _CNA  Equity Group, Inc._
_2910 Camino Ramon  Suite 725, San Ramon, CA  94583_

or to such other address as such parties may from time to time specify by written notice given in the manner provided above. Any such notice, requests, demands or communications shall be deemed to be delivered, given and received:

(i) On the first business day after delivery to the party or to an officer of the party to whom the same is directed, if delivered personally, set by international air courier or transmitted by telex or telecopy or (ii) Ten (10) days after the date of mailing, if mailed. All such notices, requests, demands and other communications shall be written in the English language.

(iii) This Agreement shall supersede, annul and replace any and all prior agreements with respect hereto concluded by and between the parties. Any variations, amendments, modifications or changes in this Agreement shall not be binding upon a party unless in writing duly executed by all parties hereto.

(iv) No consent or waiver, express or implied, by any party to or of any breach or default by the other in the performance by the other parties of their obligations hereunder shall be deemed or construed to be a consent or waiver to or any other breach or default in the performance by such other party of the same or any other obligations of such party hereunder. Failure on the part of any party to complain of any act or failure to act of the parties or to declare the other parties in default, irrespective of how long the failure continues, shall not constitute a waiver by such party of all or any of its rights hereunder.

(v) This Agreement shall insure to the benefit of and be binding upon the parties hereto, and except as otherwise limited herein, their respective successors and assigns.

(vi) This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute one and the same instrument.

(vii) This Agreement shall be construed fairly as to the parties and not in favor of or against any party, regardless of which party prepared this Agreement.

(viii) Every provision of the Agreement is intended to be severable. If any term or provision hereof is illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the validity of the remainder of this Agreement.

(ix) No part of this Agreement maybe changed or modified except by a written amendment signed by Broker and Saxe.

IN WITNESS WHEREOF, the undersigned have executed this Agreement on this _10th_ day of _June_ , 20 _1 4_

Broker:

By: _____

Print Name: _Michael Mulry_ en .

Corporation: _SMA Reginty Corp_ By Its: _____

YEVA, Inc., DBA Saxe Mortgage Company:

By: _____ By Its: _Presidet_

Print Name: _Gino Lerini_

# CORPORATE RESOLUTION

WHEREAS, there has been submitted to this board copies of certain Broker Agreement and all attachments thereto (" The Agreement") proposed to be entered into by and between CASH EQUITY GROUP INC . ("Broker") and Saxe Mortgage Company, where in the Broker agrees to submit loans on the behalf of borrowers for financing to Saxe Mortgage Company from time to time.

WHEREAS, Pursuant to the terms of the Agreement, the broker will from time to time, obtain comments from Saxe Mortgage Company to close such mortgage loans,

NOW, THEREFORE, BE IT RESOLVED, that Agreement is hereby authorized and approved, each Transaction accepted or to be accepted pursuant to the agreement is hereby authorized and approved, any Officer of the broker or anyone designated by such officer _____ as designee. Hereby authorized to execute and deliver in the name of and behalf of the broker.

FUTHER RESOLVED, that the officers of the Broker and other such individuals as may be designated From time to time, commitments from Saxe Mortgage Company for the closing of Mortgage loans;

The undersigned the secretary of the broker hereby certifies that the above revolutions where duly adopted at a meeting of the Board of Directors of Broker duly held on the ____6th____ day of ____June____, 20_14_ at which a quorum of such Board of Directors was present and acting throughout, and said resolution has not been modified and is still in force and effect:

Date: 6/4/14.

_Michael D. Mully_
Secretary

Corporate Seal

Attest

1